INLAND ENGINEERING & CONSTRUCTION CO. v.
MARYLAND CASUALTY CO. et al.

No. 4756. Decided July 21, 1930. (290 P. 367.)

*Bagley, Judd & Ray,* of Salt Lake City, for appellants.

*Wm. Story, Jr.,* and *Benj. S. Crow,* both of Salt Lake City, for respondent.

MOFFAT, District Judge.

This is an appeal from a judgment in favor of the plaintiff Inland Engineering & Construction Company against

the defendants Maryland Casualty Company, surety, and Farr, Lashus & Farr, a copartnership—sometimes referred to herein as Farr—entered upon a verdict after trial by a jury.

About January, 1925, the Inland Engineering & Construction Company entered into a contract with the state road commission of Utah for the construction of Federal aid projects Nos. 98A, 98B, and 82A. We are concerned only with projects Nos. 98A and 98B. The contract itself is brief. By reference it includes notice to contractors, the proposal, plans, and specifications, and bond executed by Inland Engineering & Construction Company, and Fidelity & Deposit Company of Maryland running to the state road commission.

Project 98B was located in Millard county and began at Cove Fort. It extended south a distance of 2.14 miles to the Beaver county line. Project 98B began at the Beaver county line and ran south a distance of 5.84 miles through what is commonly known as Wild Cat canyon. The projects as a whole have been referred to as the "Wild Cat Project."

Inland Engineering & Construction Company subcontracted the subgrading to Straw & Nelson, and certain other work to defendant Farr, Lashus & Farr. About April 10, 1925, A. L. Farr, who did business for Farr, Lashus & Farr, and D. E. Rhivers, who did business as the general manager for the respondent, entered into a subcontract under which Farr, Lashus & Farr undertook to gravel the project. Although the contract, broadly speaking, granted to Farr, Lashus & Farr the "privilege of constructing that portion of said highway located Sta. 0x00 to Sta. 322.39 and designated as F. A. P. 98B," Farr, Lashus & Farr undertook to do four things in relation to said highway and for which the respondent agreed to pay on a unit basis: (1) Binder loading, per cubic yard 50 cents; (2) loading, crushing, and screening surface material, per cubic yard $1; (3) hauling surfacing material, per cubic yard mile haul 35 cents; (4) spreading and rolling surfacing material, per mile $275. It

is admitted and the evidence shows that subsequent to the time of entering into the written contract Farr, Lashus & Farr also agreed (5) to do the rolling of the subgrade constructed by the subcontractor Straw & Nelson.

The written subcontract by reference bound Farr, Lashus & Farr to the specifications and original contract between respondent and the state road commission. There is nothing in either the specifications or in the original contract that enlarges or adds to the quantum or the five items above referred to. It must follow that the respondent had the burden of doing, or seeing that it was done, all the balance of the construction, except the five units above mentioned.

Farr, Lashus & Farr and Maryland Casualty Company, as surety, respectively gave a bond to secure the performance of the contract covering the first four of the above five items.

Farr, Lashus & Farr was engaged in finishing another road contract when Rhivers, in January, 1925, spoke to Mr. Farr about the project in question. In March, Farr and Rhivers went down to look over the project and some time later executed the contract. The contract itself is not dated, but the bond attached thereto is dated April 10, 1925. Later in the month of April, Farr was directed by Rhivers to proceed to the "Wild Cat" job. Before Farr went to the job Rhivers had talked with the resident engineer about starting the subgrade at the gravel pit and had told him that he (Rhivers) had told Farr that the work would start at that place. The subgrade was started, however, at the Cove Fort end and not at the gravel pit, and thus rendered it impossible for Farr to get to work until some time later. Farr reached the job about May 5th and began work.

At this point the first controversy is met, as to how much of the subgrading was done and as to who was responsible under the contract for the rolling of the subgrade preparatory to the graveling. Farr and Rhivers both maintained that the subgrade was not ready for gravelling until about

June 8th. Straw & Nelson say they had finished their part of the work some time earlier. Straw & Nelson insisted that they were not to finish and roll the subgrade. Farr contended that under his contract the finishing and rolling of the subgrade were not his work. Manifestly, Farr was right. The engineer so held, and, as a result, Farr, for a consideration, agreed to roll the subgrade. This item seems to have been an entirely separate contract, and to which the Maryland Casualty Company, so far as appears, was not a party, and to which the terms of the surety bond executed by said company guaranteeing the performance of the contract of Farr, Lashus & Farr did not extend. Farr contends that the first day there was any subgrade actually finished and ready to receive the gravel was June 8, 1925. By that date a very substantial part of the contract time had elapsed. The work of graveling proceeded during June, July, August, and September, sometimes satisfactorily and sometimes not. Rains caused some delay and the gravel pit caused trouble. The total calculated amount of gravel has been fixed at 16,160 cubic yards. Farr put on the road 10,145 cubic yards while working.

A question arose, and it seems was carried into the trial of the case, improperly so, however, as to whose duty it was under the contract to finish the road. Farr contended that it was his duty only to put the gravel on the road and spread, roll, and bind it. Rhivers insisted that it was Farr's duty to finish the road, including the shoulders. From the contract itself it is again manifest that Farr was right.

Owing to the late start and many difficulties and inconveniences and adverse conditions, the work was not completed within the time limited in the original contract. The state road commission had made several demands upon the respondent for more speed, and in turn these notices came to the attention of Farr.

Internal differences arose in the respondent's affairs, and Rhivers sold his interest to one Feeney. This occurred early in September, 1925. Shortly after, Browning and Feeney,

who by this time had taken the management of respondent, went over the job. About September 26th, Feeney was again on the job, and a question arose about the money with which to meet Farr's bills. Feeney testified that he had the estimate for the September work, but "the money was tied up by garnishments at the capitol," and that "the money tied up was not on any suit pending because of anything Mr. Farr owed." Feeney was again on the job about October 2, 1925. Farr continued working up to October 10th, and on October 17th he put in one day's run of one hundred yards at the request of Mr. Simpson, the resident engineer. On October 25, 1925, the resident engineer wrote the following letter to Mr. Means:

"Beaver, Utah, October 25, 1925.

"Mr. H. C. Means, Chief Engineer, State Road Commission,
Salt Lake City, Utah.

"Dear Sir:

"F. A. P. No. 98-A and 98-B.

"There has been no work done on these projects this week.

"The general contractor is not doing anything and will not allow the subcontractor to work, therefore the work is shut down and very valuable time is being lost as the weather is such that they could have worked every day.

"The general contractor or his representative have not been on the job since October 6th, which is the date he ordered the sub-contractor to shut down.

"Yours truly,
"(Signed) R. Simpson, Resident Engineer."

On respondent's objection this letter was not admitted in evidence, and the ruling rejecting it is assigned as one of the errors.

Farr left the job, and for about three months little was done. At the rate Farr had been placing the gravel during the period he worked he would have completed the job by the time the respondent got started to work after the suspension of the work by Farr. Approximately one hundred fifty cubic yards of gravel and three hundred cubic yards

of binder constituted the work accomplished by respondent during the balance of the year. About December 19, 1925, the work shut down for the winter. The state road commission took over 3.71 miles of the road which had been graveled.

In the spring of 1926 respondent secured J. T. Raleigh to complete the job. As stated by counsel for appellant, Raleigh's work consisted: First, of reconditioning and finishing the 3.71 miles of road turned over for use; second, reconditioning the base course from station 219-11 to 90-00 to receive the top course, which portion of the road had been used by the road commission as a detour all winter under the principal contract providing that the commission should provide for and furnish all detours; third, reconditioning from stations 90-00 to 0-00, which was merely subgrade, and, fourth, the finishing of the road under the terms of the contract.

The work of doing the first three parts above set out was on force account, or cost plus 10 per cent. The fourth part of the work was done under the terms of the original contract. The work under Raleigh was completed about August 13, 1926.

By the terms of plaintiff's original complaint, plaintiff seeks to recover $18,089.79, and by the terms of an amendment to the complaint the amount and prayer demand was changed from $18,089.79 to $12,893.04, and the complaint, near the close of the trial, was amended by interlineation so as to demand a total of $15,029.86. Demurrers were filed and a bill of particulars demanded showing the items making up the following sums: $3,971.27 for extra work; $1,668.86 for engineering costs; $6,053.84 and $6,395.82, for material, labor, etc. The demand for the bill of particulars made by the defendants was resisted by plaintiff. The matter was heard by the court, and the plaintiff was by the order of the court directed to file the bill.

The defendants answered and counterclaimed.

At the very threshold of this case we are met with an unusual and difficult question, upon the solution of which many, if not all, of the questions raised by the assignments of error and argued by the respective parties are affected. Many of the errors complained of by appellants result from the admission of evidence of items which appellants contend are outside of the pleadings. The difficulty will be seen at a glance from a statement of what took place and what the record shows.

The plaintiff below pleaded a definite sum as damages specified under at least four general headings or classifications. The defendants below each demanded an itemized statement or bill of particulars of the respective amounts. The plaintiff defaulted upon the demand, was relieved of the default by stipulation, and then resisted the demand and appealed to the court to relieve it from the demand. The court refused relief, and by order, shown in the record, directed the plaintiff to file the bill of particulars. No bill of particulars appears either in the judgment roll or in the bill of exceptions. It appears, however, from the numerous references in the record and from statements of counsel for both parties, that what purported to be a bill of particulars was used and referred to during the trial. That a bill was served upon defendants is admitted. That no bill of particulars was filed is also admitted, and respondent, while admitting the furnishing of a bill and the order to file it, asserts that no bill of particulars can be found in the record, and that it cannot be so found is a fact. In an attempt to remedy the situation the appellants, at the time of argument, made a motion to supply the defect in the transcript by adding to the transcript the purported bill of particulars which appellants allege respondent was required by order of the trial court to file, but which was not filed. The proposed addition, as set out in the motion and attached thereto, is the bill of particulars alleged to have been furnished to appellants in the court below. The bill thus presented was not filed in the trial court, nor introduced in evidence, nor in

any other way incorporated in or made a part of the record, although from statements of counsel and certain references in the record some kind of a paper purporting to be a bill of particulars was before the trial court, and both parties appear to have proceeded in the trial as though the order of the trial court had been complied with.

Appellants invoke Rule 5 of this court as authority for this court to include and make the submitted or proposed bill of particulars part of the record. Rule 5 of this court is as follows:

"For the purpose of correcting any error or defect in the transcript either party may suggest the same in writing to this court, specifying such error or defect, and obtain an order that the proper clerk certify the whole or part of the record as may be required; or the same may be corrected by stipulation of counsel in open court before argument. If the attorney of the adverse party be not present, or if the fact of the alleged error or defect be controverted by him, the suggestion must be accompanied by an affidavit showing the existence of the error or defect alleged."

In a case recently decided by this court it was held that "matter covered by the trial court's finding, but not incorporated in bill of exceptions nor in record, cannot be reviewed by appellate court." *Perry Irr. Co.* v. *Thomas,* 278 P. 535.

From what has been said it is clear this court has no power to cure the defect or correct the error in the transcript under authority of Rule 5. What is actually asked is to make an addition to the record. The record is made up in the court below, not in this court. So far as appears, no bill of particulars was ever filed. The clerk of the trial court could not certify to this court any more than he has already certified. The addition cannot be made by stipulation, as counsel for respondent refused in open court to stipulate, and in argument presented in respondent's brief disposes of a number of assignments of error with this statement: "The bill of particulars referred to by counsel can be made a part of the record only by being in-

corporated into the bill of exceptions. It can be brought before this court only in that way." There is some authority for counsel's statement. Such is not the rule in this jurisdiction, as a bill of particulars may be otherwise incorporated in the record or judgment roll, under the statute. For the present the above statement is quoted solely for the purpose of showing the position of counsel for the respondent in relation to Rule 5. No affidavit has been submitted showing the existence of an error or defect, and, from what has been said, it would seem that no such affidavit could be made. The truth of the whole matter is that the respondent disobeyed the order of the trial court by either failing, neglecting, or refusing to file the bill of particulars when ordered, and the appellants did not present the bill of particulars served by respondent by either filing the copy served or introducing it in evidence, if either of such steps may be proper procedure.

Appellants' motion to add to or correct the defect in the record does not, upon the facts and circumstances of this case, warrant this court in making any order directed to the clerk of the trial court. Any such order would manifestly be futile. This court, being powerless to grant the relief asked, must, and therefore does hereby, deny the motion to correct the record.

Having so disposed of appellants' motion, it then becomes necessary and proper to look further into the record, the procedure taken, and positions of the parties. It may be properly asked: What is the function and purpose of a bill of particulars? When a bill of particulars is demanded and furnished, either voluntarily upon the demand or by an order of the court, should the bill of particulars be filed? Is a bill of particulars, when furnished, a pleading and binding upon the party furnishing the same, or is it merely a matter of information furnished to the adverse party which may be disregarded at will? Can the adverse party, when ordered by the court to file a bill of particulars, disregard the court's order and then upon appeal shift the burden of a record

such party was required to make to the other party? Under the authorities and the general practice and uses of a bill of particulars its purposes have been somewhat extended beyond the strict letter of the statute. The statute relating to a bill of particulars is largely a rule of pleading relieving a pleader from the necessity of pleading each item unless required by the adverse party upon demand for a more particular and complete statement. Comp. Laws Utah 1917, § 6598 provides:

"It is not necessary for a party to set forth in a pleading the items of an account therein alleged, but he must deliver to the adverse party, within ten days after a demand thereof, in writing, a copy of the account, or be precluded from giving evidence thereof. The court, or a judge thereof, may order a further account when the one delivered is too general or is defective in any particular."

Under the statute "it is not necessary for a party to set forth in a pleading the items of an account therein alleged." But, likewise under the statute, the privilege thus granted the pleader in the first instance is limited by the same statute to be required to "deliver to the adverse party, within ten days after a demand thereof, in writing, a copy of the account," and, upon failure so to do, "be precluded from giving evidence" of the account. A strict limitation of the word "account," as used in the statute, might make the statute applicable to a book account only. Such construction would unnecessarily restrict the meaning, and would so limit the application of the statute as to make it ineffective for many of the purposes for which a bill of particulars is now used. In the case of *Morrisette, Executor,* v. *Wood,* 128 Ala. 505, 30 So. 630, 631, the court said:

"The word 'account' has no clearly-defined legal meaning."
"A bill of particulars has been held proper in actions based on the common counts, for money paid, or money had or received; in actions on accounts, under special counts in assumpsit, and on accounts stated. It has been ordered in actions of libel and slander; ejectment; trover; trespass; in suits for divorce; for criminal conversion; for an escape; for negligence, partition, conspiracy, malicious prosecution, or fraud; to recover for professional services; on commercial paper; on life-

insurance policies; to set aside fraudulent conveyances, or assignments; and in election contests. But while a bill of particulars may be ordered in a tort action, its use is largely confined to actions on contract, for if a pleading in an action of tort is not sufficiently explicit the remedy by demurrer is usually adequate." 31 Cyc. 568 (citing cases).

When the trial court ordered the plaintiff, upon defendants' demand, to file a bill of particulars, the court clearly acted within the scope of its authority, although the statute, by its wording, requires that the pleader upon whom the demand is made "must deliver to the adverse party * * * a copy of the account, or be precluded from giving evidence thereof."

There is some confusion among the authorities as to whether or not a bill of particulars is a pleading. This same confusion, at least in part if not entirely, accounts for the divergent positions as to whether or not a bill of particulars is a part of the judgment roll or whether it must be included in the bill of exceptions. As to what constitutes the judgment roll and what the bill of exceptions under the Utah statutes, it becomes necessary to refer to the statutes. Comp. Laws Utah 1917, § 6867, as amended by Laws Utah 1925, c. 52, defines, under two different situations, what constitutes the judgment roll and how it shall be made up, viz:

"Immediately after entering the judgment the clerk must attach together and file the following papers, which constitute the judgment roll:

"1. In case the complaint be not answered by any defendant, the summons, with the affidavit of proof of service, and the complaint, with a memorandum indorsed thereon that the default of the defendant in not answering was entered, and a copy of the judgment;

"2. In all other cases, the pleadings, a copy of the verdict of the jury, or findings of the court or referee, all bills of exception taken and filed, all orders, matters, and proceedings deemed excepted to without a bill of exceptions, and a copy of any order made on demurrer, or relating to a change of parties, a copy of the judgment, the order overruling the motion for a new trial and all orders extending the time for the preparation, service and settlement of bills of ex-

ceptions. If there are two or more defendants in the action, and any one of them has allowed judgment to pass against him by default, the summons, with proof of its service upon such defendant, must also be added to the other papers mentioned in this subdivision."

The pleadings, the findings of fact, the verdict of the jury in jury cases, all bills of exception taken and filed, and other enumerated matters constitute the judgment roll. It is apparent that, under this statute, we may have a judgment roll without a bill of exceptions, the bill of exceptions becoming a part of the judgment roll only after exceptions are taken and filed. If, however, a bill of particulars is a pleading, it becomes a part of the judgment roll, and upon filing would be so included by the clerk of the court under section 6867, supra, even though no bill of exceptions were included in the judgment roll. That there are circumstances under which a bill of particulars may not be a pleading is held in some cases. If the statement of the bill of particulars does not relate to any of the issues the bill may not be regarded as a pleading. That a statement in the bill of particulars of the grounds of defense, which does not constitute the issue to be tried, is no part of the pleading, and is not subject to demurrer, is held in *O. L. Standard Dry Goods Co.* v. *Hale & Pressley*, 148 Va. 640, 139 S. E. 300. But when the bill of particulars relates to an issue in a complaint, an answer, or a counterclaim, it is then a pleading, and should be filed with the clerk of the court, and becomes a part of the judgment roll on appeal as a part of the pleadings. A few states hold contrary views and maintain that, in order that the bill of particulars may be preserved in the record and be before the court on appeal, it must be included in and made a part of the bill of exceptions. Comp. Laws Utah 1917, § 6967, among others, relates to the bill of exceptions and provides:

"No particular form of exception is required, but when the exception is to the verdict or decision, upon the ground of insufficiency of the evidence to justify it, the objection must specify the particulars in which such evidence is alleged to be insufficient. The objection must

be stated, with so much of the evidence or other matter as is necessary to explain it. The stenographer's notes of the evidence may be stated. Documents on file in the action or proceeding may be copied, or the substance thereof stated, or a reference thereto sufficient to identify them may be made."

Manifestly, it would be difficult to preserve a bill of particulars in a bill of exceptions unless the bill of particulars were offered in evidence and either received or objection made thereto and exception taken, and prepared, settled, and included in the bill of exceptions, as provided by Comp. Laws Utah 1917, § 6969, as amended by Laws Utah 1925, c. 51, which, so far as material here, provides:

"When a party desires to have exceptions taken at a trial settled in in a bill of exceptions, he may * * * prepare a draft of a bill and serve the same, or a copy thereof, upon the adverse party. Such draft must contain all the exceptions taken upon which the party relies. Within ten days after such service, the adverse party may propose amendments," etc.

It is further provided, Comp. Laws Utah 6970, for the settlement of exceptions at the time taken, as follows:

"An exception to any decision may be presented to the court or judge or judicial officer or referee for settlement at the time the decision is made, and after having been settled shall be signed by the judge, judicial officer, or referee, and filed with the clerk."

Under this section, exceptions may be taken and settled during the course of the trial, but could in no way permit the inclusion of a bill of particulars in the bill of exceptions unless upon a ruling for or against admitting the same in evidence or permitting or refusing the filing of the same pursuant to an order of the court.

Further exceptions may be settled by the court after judgment as provided by Comp. Laws Utah 1917, § 6971, as follows:

"Exceptions to any decision made after judgment may be presented to the judge at the time of such decision, and be settled or noted as provided in § 6970 and a bill thereof may be presented and settled afterward, as provided in § 6969, and within like periods after the

entry of the order, upon appeal from which such decision shall be reviewable."

Pleadings make up the issues: bills of exception preserve the objections and rulings of the court thereon as it may sustain or overrule them, as determined by the ■ court under the issues as defined and limited by the admitting or excluding of evidence relating thereto under the law.

Whenever a demand for a bill of particulars relates to an issue raised by allegations of a complaint, an answer, or a counterclaim, its proper classification must be a pleading, which should be filed, as ordered by the court in this case, and the issues cannot be said to be made up or the case be at issue until such has been done.

"The proper office of a bill of particulars is to inform the opposite party *and the court* of the precise nature and character of the cause of action or defense for which the pleader contends in respect to any material or issuable fact in the case and which is not specifically set out in the pleadings, and which cannot, in many cases, be given in the pleadings without great prolixity. It is properly an amplification of the pleading, designed to make more specific general allegations appearing therein, and thus avoid surprise at the trial." (Italics supplied.) 31 Cyc. 565.

"The effect of a bill of particulars is to enlarge or limit the scope of the complaint or counterclaim or other defense. * * * As a general rule after a bill of particulars is filed the party furnishing the same is limited in his proofs to the particular cause of action or defense therein specified. * * * But it is not itself to be considered or used as evidence against the party furnishing it. It is generally held that a bill of particulars does not become a part of the pleading except to the extent restricting the proof to matters therein specified, although some cases hold the contrary view." 31 Cyc. 570.

How can a court rule upon the admissibility of evidence relating to matters set out in a bill of particulars unless the bill is filed and is before the court as a part of the pleadings limiting and defining the issues? The authorities seem to be well nigh unanimous that in a proper case, ■ when a bill of particulars is permitted, the bill limits

or enlarges the issues and proofs. "A pleading and bill, however, should be construed together and the facts set up in the bill of particulars may be looked to in explanation of uncertainties in the pleading and vice versa." 31 Cyc. 571. "As between the pleading and the bill of particulars, the latter will in many cases control in case of inconsistency." 31 Cyc. 571.

In *Utah State Bldg. & L. Ass'n* v. *Perkins*, 53 Utah 474, 173 P. 950, 952, after quoting Comp. Laws Utah 1917, § 6598 and while holding that the section was not applicable to the case then before the court, this court said:

"It is plainly the object of the statute to render it unnecessary for plaintiffs, in suing upon an account, to set out at length the different items going to make up that account. The right, however, is given by that section to a defendant, upon proper notice, to require the plaintiff to furnish the items constituting such account, or statement of account, which, in practice, is designated a 'bill of particulars.' In actions of that nature the account or items making up the account is the foundation of the action."

In *Morrisette, Executor*, v. *Wood*, 128 Ala. 505, at page 509, 30 So. 630, 632, the court so aptly states the function of a bill of particulars that we quote somewhat at length:

"We have stated what the office of a bill of particulars under the statute is—to amplify the pleadings, and to prevent surprise of the defendant by furnishing him with a statement of matters against which he is called to defend. The bill, when furnished, limits the generality of the pleading, and its effect is, and should be, to limit the proof to the particulars specified therein. 3 Enc. Pl. & Prac. 519.

"In Florida they have a statute which requires that 'all bonds, bills of exchange, covenants and accounts, upon which suit may be brought, or a copy thereof, shall be filed with the declaration.' The only difference, in substance, between their statute and ours as to an account is that there the bill is required to be filed with the declaration, and ours that it must be furnished before the trial, upon the demand of defendant. In the construction of their statute the Florida court hold that the plaintiff will not be permitted to recover under the common count on any cause of action not included in the bill of particulars filed with the declaration, and where he files a bill of particulars he will not be allowed in the proof to go beyond

them. *Columbia County* v. *Branch,* 31 Fla. 62, 12 So. 650; *Robinson* v. *Dibble's Adm'r,* 17 Fla. 457; *Waterman* v. *Mattair,* 5 Fla. 211. To the same effect is *Starkweather* v. *Kittle,* 17 Wend. 20; *Brown* v. *Calvert,* 4 Dana (Ky.) 219. In the last case cited the court said: 'Whenever the form of the declaration is so general as not to apprise the defendant of the nature, character, and extent of the claim set up against him, he may demand a bill of particulars. Such a bill is not only proper by way of of limiting the plaintiff in his proof to the specific demands claimed by him, but is essential to enable the plaintiff [defendant] to prepare for his defense, and to guard him against surprise. The right is not only sanctioned by authority, but by reason and propriety.'

"The proofs should have been limited to the bill of particulars as to the services rendered and the value of the particular items of service when shown. The court therefore erred in the admission of evidence, in not limiting the proof to the plaintiff's bill of particulars, and in that part of its oral charge excepted to by the defendant."

In the present case, however, we have a more difficult situation. The record shows that the defendants seasonably demanded a bill of particulars; that the plaintiff filed a motion with the court requesting that the court deny the defendants' demand; that the court ordered the plaintiff to file the bill of particulars. No bill of particulars was filed. A purported bill was furnished to the defendants. The case was tried, and the record reveals that counsel for both parties made reference to and objections were made as though the purported bill of particulars was a part of the proceedings. But whether the court knew anything about the purported bill of particulars, or whether the rulings of the court were made with reference thereto, it is impossible to determine from the record. It is likewise impossible to determine whether or not any evidence was admitted or excluded because the purported bill of particulars was or was not filed, or whether or not, or in what way if at all, the complaint was limited, modified, or added to by the alleged bill of particulars.

The respondent having elected to disregard the court's order to file a bill of particulars, does it now lie with the

respondent to say that a verdict obtained before a jury upon evidence which this court is unable to say was presented within the issues as they were or should have been limited by the bill of particulars ordered by the court to be filed should be permitted to stand? Suppose the defendants had filed a special demurrer to require the plaintiff to make the items covered by the demand for a bill of particulars more specific and the demurrer had been sustained, evidently the court would not have proceeded to trial until the complaint had been amended. Or suppose the court had so proceeded and a judgment had been entered, should not such judgment be set aside as a mistrial and void? The situation is strikingly analogous to a case where a demurrer had been sustained and the case dismissed and then by inadvertence the court proceeded to hear evidence and enter a judgment. Such a judgment clearly would be void. In the present case the court ordered the filing of a bill of particulars. This court cannot say but that the effect of filing the bill would have materially changed the issues. At all events, under the statute, the plaintiff should have been precluded from giving any evidence upon the items of the complaint until it had complied with the court's order.

Appellants' first assignment of error relates to the denial of a motion made by appellants for an order to make the Fidelity & Deposit Company a party plaintiff or defendant. In view of the state of the record at that time, the motion should have been granted. At the stage of the proceedings when the motion was made the court could not foresee the verdict of the jury, and, had the verdict been for the appellants, they would have been prejudiced by the court's ruling. In view, however, of the verdict and judgment, the error has become harmless.

The principal burden of the assignments of error is directed at matters either directly or indirectly relating to the bill of particulars. Appellants' brief is written upon the assumption that the bill of particulars is before this court, and, such not being the case, it would be a waste of time

and energy to discuss the numerous assignments and arguments therein in detail.

There are a number of matters that should and can be considered upon the record as it stands and without reference to the bill of particulars or assignments of error relating thereto. One relates to the court's refusal to admit in evidence the letter of October 25, 1925, addressed to H. C. Means and written by R. Simpson, hereinbefore set out at length in the statement of facts. This letter is only one of a number written by the resident engineer, Mr. Simpson, to various parties, and principally to Mr. Means, chief engineer of the state road commission. All parties recognized Mr. Simpson as the resident engineer in charge of the supervision and checking of the work. One of his principal duties was to make regular reports to the road commission of the conditions and progress of the work. Under the terms of the contract he was the representative of all parties to this action in certain matters, and by his decisions they were bound either directly or indirectly. He was the official representative of the state road commission. The court permitted numerous letters written by the resident engineer to be received in evidence. This particular one was rejected. Some of the matters referred to are facts clearly within the knowledge of the resident engineer, and some are incompetent and conclusions. One of the questions submitted to the jury was whether or not Farr had abandoned the work or whether Farr was discharged by the respondent. This letter contains some evidence that might have been admitted if properly segregated and presented, and likewise some that should not have been admitted. The trial court having determined that the letter as a whole should not be admitted under such circumstances, the ruling of the trial court should not be disturbed.

As heretofore adverted to in the statement of facts, there were five specific items which appellants undertook to perform. Four of them are covered in the written contract

between the contractor and the subcontractor, referred to as Exhibit T, and one is covered by an oral contract subsequently entered into between Inland Engineering & Construction Company and Farr, Lashus & Farr, whereby Farr agreed to roll the subgrade for a stated consideration. Properly speaking, this oral contract is a separate cause of action, and if it had been so pleaded, it would have materially helped to clarify the issues and simplify the presentation of the evidence, were it not for the fact that the Maryland Casualty Company was not a party to the oral contract. No question was raised, however, as to that in the trial court. Under the terms of the oral contract, all parties seem to agree that the appellants Farr, Lashus & Farr were to receive $100 per mile for rolling the subgrade. There is some evidence in the record that at the time of the alleged termination of appellants' contract 3.71 miles of the road had been completed. Evidently that much of the subgrade had been rolled. How much more does not appear. We fail to see, as to this question of rolling the subgrade, how the jury could determine that matter at all. If the jury found that appellants breached the rolling of the subgrade contract, what was the amount of damage? There is no evidence that the cost of rolling the subgrade was any different from the contract price. Therefore, the mileage rolled subtracted from the total mileage would have been an easy matter of determination. But there seems to be no evidence from which it could be determined and we are unable to determine whether or not such item was included in the verdict and judgment, or whether or not such item was assessed against the defendant Maryland Casualty Company. The same amount was assessed against all defendants. There is no evidence that the Maryland Casualty Company was on any bond relating to the rolling of the subgrade. It was determined the rolling of the subgrade was not included in the original contract between the Inland Engineering & Construction Company and Farr, Lashus & Farr, and there appears no provision whereby the liabil-

ity of the surety could be extended to cover the subsequent oral contract. It was prejudicial error to submit the matter to the jury without indicating no liability on the part of the surety upon the oral contract for the rolling of the subgrade. The court's instructions seem to reflect the position that the appellants were to do everything to complete the road, except that which was let to the other contractors. A preliminary reading of the contract will reveal that such is not the case. If a general contractor chooses to split up his contract into separate items and subcontract those items, it would seem to be fundamental and common sense that, if he fails to subcontract and specify all the items included in the general contract, such items as he omits to specify in his subcontracts he must take care of himself.

A mere reference to the general contract and the provision in the subcontract that the subcontractor is to be bound by the terms, plans, and specifications of the general contract cannot enlarge the terms or conditions of the subcontract, which, by its terms, is limited to certain definite and specific items, as in this case, the doing of only four selected and specific items at a specified unit price per unit of quantity. The written subcontract provides that the appellants should construct that portion of the highway and for which respondent was to pay (1) binder loading per cubic yard 50 cents; (2) loading, crushing, and screening surfacing material, $1 per cubic yard; (3) hauling surfacing material, 35 cents per cubic yard, and (4) spreading and rolling surfacing material per mile $275. Evidence, however, was introduced, over objection, relating to such items as finishing the shoulders, scarifying, and cleaning borrow pits. Under the terms of the contract, the instructions given to the jury should have been so limited as to have covered all of the items contained therein and undertaken to be performed by the subcontractors and none others. The jury, however, were instructed:

"In the present case you are instructed that the measure of damages for the plaintiff is the plaintif's necessary and reasonable cost

of completing the highway in excess of the amount which the plaintiff would have been required to pay the subcontractor, Farr, Lashus & Farr, for the completion of the same if the subcontractor had completed the same within the time and in the manner agreed upon by them."

While there were other instructions given tending in some ways to modify the sweeping statements contained in the above instruction, yet, in view of the apparent tendency in the rulings of the court in the admission of evidence, the generally reflected tendency of the court's instructions considered as a whole it seems to this court were bound to impress the jury with the idea that the appellants were to finish the highway whatever the items or cost.

Assignment of errors No. 2 and 3 are well taken. Mr. Feeney, an officer of the plaintiff corporation, was permitted to testify over timely objection and exception, that the reasonable cost of transporting the rockcrusher from the work to Ogden was $300. The rock-crusher was purchased by plaintiff at Eureka, Utah, and was moved down to the works. Some of the appliances necessary for the rock-crusher were taken from Provo Canyon. So far as appears, the rock-crusher and the other appliances were never at Ogden. They were attached by some one at Beaver. Apparently by some creditor of the plaintiff. This is the last we hear of the rock-crusher. Apparently it was never shipped to Ogden, and there is no basis for any claim for the reasonable cost of shipping the rock-crusher to Ogden. While the officers of the plaintiff corporation reside at Ogden, there is nothing to show that they had any use for the rock-crusher at Ogden. In view of the ruling of the court, the jury might well have believed that the $300 was a proper charge against the defendants, but clearly upon this record it is not.

Assignments of error Nos. 7, 8, and 16 are well taken. It will be observed that there is no language in the contract between the plaintiff corporation and the defendants Farr, Lashus & Farr that designates where the work shall

begin of placing gravel on the grade. There is no merit to respondent's contention that the evidence sought to be elicited by the questions offended against the rule that oral evidence may not be received which varies the terms of a written contract. Respondent relies upon the following provisions of the contract between it and the state road commission:

"Contractor shall begin the work to be performed under the contract on such date as the engineer shall notify him to proceed. *The place where the work is to be started either will be stated in the notice to proceed or will be designated on the ground.*"

"To prevent misunderstanding and litigation, the engineer shall decide any and all questions which may arise as to * * * work performed, and as the manner of performance and rate of progress of said work." Main contract, § 55.

The contract between Farr, Lashus & Farr and the plaintiff provides that the subcontractors, Farr, Lashus & Farr, shall perform the work according to the specifications of the main contract. It is obvious that Farr, Lashus & Farr could not perform their contract or any part thereof until the grade had been constructed by Straw & Nelson who held a subcontract under the plaintiff. Farr, Lashus & Farr had no control over Straw & Nelson, but apparently plaintiff did. If the plaintiff entered into any contract with Farr, Lashus & Farr which was calculated to assure Farr, Lashus & Farr that the work of constructing the sub-grade would not interfere with the work of graveling, such agreement could not be said to offend against the written provisions of the contract between the plaintiff and the state road commission. Indeed, in view of the fact that Farr, Lashus & Farr were to complete the work in a limited time, it would seem to follow by implication that the plaintiff and their subcontractors, Straw & Nelson, would not interfere with the prosecution of the work of graveling the grade.

The defendant Maryland Casualty Company was not liable on the oral contract between the plaintiff and Farr, Lashus

& Farr to roll the subgrade. The plaintiff was therefore not entitled to recover anything from the Maryland Casualty Company because Farr, Lashus & Farr did not perform the work of rolling the subgrade. The defendant Maryland Casualty Company in such a cause of action would not be a proper party to a suit for the rolling of the subgrade. It is impossible to determine from this record what part of plaintiff's claim is founded upon the contract for the performance of which the Maryland Casualty Company was surety and what part was for labor and material for which the Maryland Casualty Company is not liable. The plaintiff proceeded upon the theory that the Maryland Casualty Company was surety for the finishing of the road after Straw & Nelson had constructed the subgrade. It was doubtless due to such theory that the plaintiff made no attempt to segregate the expense of rolling the subgrade and cleaning up the road from the expense of performing the written contract for which the Maryland Casualty Company was surety. One instance will serve to illustrate the confusion which resulted from the erroneous theory upon which plaintiff offered this evidence. The contract provides that the subgrade shall be rolled with a roller weighing at least ten tons. The contract also provides that, when the gravel is placed on the road, it shall be rolled with a three-wheeled roller weighing not less than ten tons. The evidence shows that the plaintiff rented a roller from the state road commission, and it agreed to pay the cost of transporting the roller to and from the place where the road was being constructed and also to pay a per diem rental for the use of the roller. The evidence is silent as to just what use was made of the roller, that is, whether it was used to roll the subgrade or the gravel, or both. While it may be inferred that it was used for both, there is no evidence from which it can be determined what time the roller was used on the subgrade and what time it was used on the surface material. Obviously, the Maryland Casualty Company is not liable for the rental of a roller for the time it was used

on the subgrade. Probably also the Maryland Casualty Company is not liable for all of the cost of transporting the roller to and from the works if in fact the roller was used on the subgrade. What has been said as to the roller applies equally to other expenses, such as the use of coal, gasoline, oil, and many other expenses.

What has been said sufficiently shows that there was error committed by the trial court to the prejudice of appellants. It therefore becomes unnecessary to consider other assignments of error. The case is therefore remanded to the trial court, with directions to set aside the verdict, grant a new trial, and proceed in accordance with the views herein expressed. Appellants to recover costs.

STRAUP, J., concurs.

ELIAS HANSEN, J. (concurring). I am of the opinion that a bill of particulars is properly a part of the pleadings rather than a part of the bill of exceptions. However, I do not think that, upon the record in this case, the failure of the plaintiff to file the bill of particulars is ground for a reversal of the judgment. The appellants do not assign as error the failure of the respondent to file a bill of particulars, and they do not ask that the judgment be reversed because a bill of particulars was not filed. When the bill of particulars was served upon appellants they could have filed the same and thus have made a complete record. This they failed to do. In the absence of a demand for a bill of particulars, none need be furnished. Apparently the appellants were satisfied with what the respondent did in compliance with the demand for a bill of particulars. The penalty, and the only penalty, prescribed by statute for the failure of a party to furnish a bill of particulars when demand is made, is that the party so in default is "precluded from giving evidence thereof." Comp. Laws Utah 1917, § 6598. If, therefore, a bill of particulars is demanded, but not furnished or filed, and if at the trial the party demanding the bill of particulars

fails to object to the introduction of evidence upon the ground that a bill of particulars has not been furnished or filed, it would seem to follow that the failure of the adverse party to furnish or file a bill of particulars is thereby waived. The appellants in this case claim that evidence was received over their objection concerning some items which were not mentioned in the bill of particulars, and for that reason the judgment should be reversed. In my opinion all of the assignments of error which are based upon the claimed error of the trial court in admitting evidence of items which appellants claim were not mentioned in the bill of particulars should be resolved against them because the bill of particulars is not properly before us, and therefore we are unable to determine whether error was or was not committed as claimed by the appellants. We may not assume that error was committed. The burden of showing that the trial court committed error is on the appellants. They, having failed in the court below to insist that their demand for a bill of particulars be complied with, should not now, for the first time, be heard to complain.

I concur in the reversal of the judgment because of the other reasons set out in the opinion written by Judge MOFFAT.

CHERRY, C. J. I concur in the views expressed by Mr. Justice ELIAS HANSEN that the judgment should not be reversed because of the failure of the respondent to file the bill of particulars.

I concur in the order reversing the judgment for the other reasons set out in the opinion written by Judge MOFFAT.

FOLLAND, J. I concur in the views expressed by Mr. Justice ELIAS HANSEN that the judgment should not be reversed because of the failure of the respondent to file the bill of particulars.

I concur in the order reversing the judgment for the other reasons set out in the opinion written by Judge MOFFAT.

EPHRAIM HANSON, J., being disqualified, did not participate therein.